# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

TIMOTHY PETTY,
    *Plaintiff*,

v.

CITY OF NEW BRITAIN, *et al.*,
    *Defendants*.

No. 3:17-cv-01798 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Timothy Petty is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against the city of New Britain and four members of the New Britain Police Department: Detective Halt, Detective L. Smith, Chief of Police James Wardwell, and Sergeant Blackmore. Plaintiff principally alleges defendants violated his Fourth and Fourteenth Amendment rights. Based on my initial review pursuant to 28 U.S.C. § 1915A, I will allow plaintiff's federal and state law claims against Detectives Halt and Smith to proceed in their individual capacities as well as his claim against the City of New Britain, but will dismiss this action as to the remaining defendants for failure to allege plausible grounds for relief.

### BACKGROUND

The following allegations from plaintiff's complaint are accepted as true for purposes of the Court's review. On October 2, 2015, at approximately 11:44 am, Detectives Halt and Smith were surveilling the area of Horseplain Road in New Britain in an unmarked police vehicle. The detectives claimed that they spotted plaintiff in the driver's seat of another vehicle and saw him reach underneath his body. As plaintiff pulled into his driveway, Detectives Halt and Smith

1

pulled their vehicle behind him, exited their vehicle with their guns drawn, and instructed plaintiff to "put [his] hands up." Doc. #1 at 2 (¶ 11).

Detectives Halt and Smith handcuffed plaintiff behind his back. When plaintiff asked if he was being arrested, the detectives said that he was not. Plaintiff then asked what this was about, and the detectives responded, "Shut up, nigger!" and told him to lie face down on the ground. Plaintiff refused to lie down on the ground because it was raining. One detective grabbed his legs and the other grabbed his arms and slammed him face first into the concrete. One detective pressed his knee into plaintiff's back, told him to "stay still bitch," and rubbed his hand on plaintiff's buttocks while the other detective held plaintiff's legs. Plaintiff started twisting and turning his body, which prompted one detective to lift up his legs in the air so that only his stomach was touching the ground. The other detective put on gloves, pulled plaintiff's pants down, and started smacking plaintiff's buttocks while telling him to "loosen up." Plaintiff continued to twist and turn, and the detectives drew their tasers and instructed him to stop moving. Plaintiff complied. One of the detectives "jammed his fingers between [plaintiff's] butt cheeks," pulled out a bag that had blood on it, and said, "Got you." *Id.* at 2-3 (¶ 11).

Detective Smith later wrote a police report in which he claimed that plaintiff's belt and pants zipper were undone when he encountered him. Detective Smith further claimed that he frisked plaintiff outside his pants and between his legs and felt a number of substances which he knew from experience felt like narcotics packages. He also wrote that, based on his training, suspects often conceal illegal narcotics and weapons in their underwear. Plaintiff disputes a number of statements in Detective Smith's report. *Id*. at 3 (¶ 12).

Plaintiff sustained injuries from the incident, including rectal bleeding, bruising and tearing, shoulder pain, and facial lacerations. But he was denied medical care for his injuries at

2

the scene. Prison medical staff later diagnosed him with post-traumatic stress disorder, and he continues to suffer physical and emotional pain. *Id.* at 3-4 (¶¶ 11, 13).

Sergeant Blackmore trains, supervises, and oversees all operations of the New Britain police department along with the Chief of Police, James Wardwell. Sergeant Blackmore also signed off on the police report. *Id.* at 4 (¶ 14).

The complaint alleges claims against the individual defendants for unreasonable search and seizure, use of excessive force, and denial of medical care, all in violation of the Fourth and Fourteenth Amendments. The complaint also alleges state law claims including negligence, assault, and battery against one or more of the individual defendants, as well as a claim against the City of New Britain pursuant to Conn. Gen. Stat. § 52-577n.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro*

3

*se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).[1]

### *Unreasonable Search and Seizure*

The Fourth Amendment to the U.S. Constitution protects the right of the people to be free from unreasonable searches or seizures, and the protections of the Fourth Amendment are incorporated against the States—including municipalities and their employees—under the Fourteenth Amendment. The facts alleged in the complaint indicate that the police had no probable cause to arrest plaintiff nor reasonable suspicion to conduct a limited investigative detention, much less to engage in what amounted to a strip search of his person. *See, e.g.*, *Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 78 (D. Conn. 2016). Accordingly, I will allow plaintiff's claims against Detectives Halt and Smith to proceed for unreasonable search and seizure in violation of the Fourth Amendment.

### *Excessive Force Claim*

The Fourth Amendment prohibits the use of excessive force by police officers in searching or arresting a suspect. *See Graham v. Connor*, 490 U.S. 386 (1989); *Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998). To establish a Fourth Amendment excessive force claim, a plaintiff must show that the officer's use of force was "objectively unreasonable."

---

[1] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would likely decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. *See Hamlin v. City of Waterbury, et al.*, 2017 WL 4869116, at *1 n.1 (D. Conn. 2017). Accordingly, because this ruling allows the federal law claims to proceed against Detectives Halt and Smith, it likewise allows the related state law claims to proceed against these two defendants as well.

*Graham*, 490 U.S. at 397. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, *id.* at 396, and this "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.

Plaintiff's allegations, if true, are sufficient to state a claim for excessive force. Plaintiff claims that Detectives Halt and/or Smith slammed him face first into concrete, rubbed and slapped his buttocks several times, and "jammed his fingers between his butt cheeks roughly." He also alleges that the detectives called him a "nigger" and a "bitch" and told him to "loosen up" while they sexually assaulted him. Plaintiff claims that this force caused numerous injuries, including rectal bleeding, bruising, face lacerations, and shoulder injuries as well as PTSD and emotional suffering. In view of the factors set forth by the court in *Hemphill*, I conclude that the use of such force during this search and arrest would be objectively unreasonable. Accordingly, I will allow plaintiff's claims against Detectives Halt and Smith to proceed for the use of excessive force in violation of the Fourth Amendment.

### *Denial of Medical Care*

Plaintiff claims that Detectives Halt and Smith denied him medical care at the scene and acted with deliberate indifference. The Due Process Clause of the Fourteenth Amendment "does require the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (denial of medical care violates due process rights of a pretrial detainee). To state a claim for denial of medical care, plaintiff must adequately allege that the officers "denied treatment needed

5

to remedy a serious medical condition and did so because of their deliberate indifference to that need." *Id.* at 856.

Plaintiff here claims sufficiently serious medical conditions, including rectal bleeding, facial lacerations, bruising, and shoulders injuries. Plaintiff has also adequately claimed that Detectives Halt and Smith were deliberately indifferent to his serious medical conditions. Because Detectives Halt and Smith were allegedly the ones who caused these injuries, they were undoubtedly aware of the injuries and the pain they caused plaintiff. Accordingly, plaintiff's claim for denial of medical care may proceed against Detectives Halt and Smith.

### *Official Capacity Claims Against Detectives Halt and Smith*

Plaintiff has sued the individual defendants in both their individual and official capacities. When a plaintiff sues a municipal official in his or her official capacity, this is the equivalent of filing an action against the municipality itself. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007). And in order for a municipality to be liable under § 1983 for the wrongful acts of its employees, a plaintiff must allege that "the municipality had a policy, custom, or practice that was intended to violate or that was deliberately indifferent to constitutional rights, and that this policy, custom, or practice actually caused the violation by municipal actors of plaintiff's constitutional rights." *Conroy v. Caron,* 2017 WL 3401250, at *16 (D. Conn. 2017).

Plaintiff here has not alleged that New Britain had a policy, custom, or practice intended to violate his rights or that the detectives' alleged violations of his constitutional rights was done pursuant to such a practice. Accordingly, plaintiff has not stated a claim against the detectives in their official capacities, and his claims against the detectives shall proceed against them in their individual capacity only.

6

*Supervisory Liability Claims Against Sergeant Blackmore and Chief Wardwell*

Plaintiff also sues Sergeant Blackmore and Chief of Police James Wardwell based on their supervisory capacity and based on Sergeant Blackmore signing off on the police report. To the extent that plaintiff seeks money damages against Sergeant Blackmore and Chief Wardwell in their official capacities, his claim is barred by *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), for the same reasons stated above. To the extent plaintiff seeks money damages against them in their individual capacities, he has failed to allege sufficient facts to show that they were personally involved in the deprivation by Detectives Halt and Smith of plaintiff's constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant"); *see also Brown v. Rinehart*, 325 F. App'x 47, 50 (3d Cir. 2009) (grant of summary judgment for police sergeant proper where only evidence of sergeant's personal involvement in the alleged violation was that sergeant signed off on police reports documenting plaintiff's arrest). Nor for the same reasons of lack of personal involvement would I choose to exercise any supplemental jurisdiction over plaintiff's state law claims against Sergeant Blackmore and Chief Wardwell. *See Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000).

*State Law Claim Against City of New Britain*

Plaintiff seeks to hold the City of New Britain liable for the acts of its employees pursuant to Conn. Gen. Stat. § 52-557n. I will allow this derivative claim to proceed at this time in light of the fact that I have allowed the underlying state law claims—including negligence—to proceed against Detectives Halt and Smith. *See, e.g.*, *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 366 (D. Conn. 2008).

**ORDERS**

(1) All claims against Chief Wardwell and Sergeant Blackmore are dismissed. Plaintiff's excessive force, denial of medical care, unreasonable search and seizure claims, and state law claims may proceed against Detectives Halt and Smith in their individual capacities for damages. Plaintiff's claims against Detectives Halt and Smith in their official capacities are dismissed. Plaintiff's claim against the City of New Britain pursuant to Conn. Gen. Stat. § 52-557n may also proceed at this time.

(2) Within **twenty-one (21) days** of this Order, the clerk shall mail a waiver of service of process request packet containing the complaint to Detective Halt and Detective L. Smith at New Britain City Police Department, 10 Chestnut Street, New Britain, CT 06051. The clerk shall report to the court on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall prepare the documents required for official capacity service on the City of New Britain and deliver them to the U.S. Marshal Service. Within **twenty-one (21) days** of this Order, the U.S. Marshals Service shall serve the summons, a copy of the complaint, and this order on the city of New Britain by delivering the necessary documents in person to the New Britain Town & City Clerk, 27 West Main Street, Room 109, New Britain, CT 06051.

(4) Detectives Halt and Smith and the City of New Britain shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an

answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

It is so ordered.

Dated at New Haven, Connecticut this 29th day of January 2018.

/s/*Jeffrey Alker Meyer*  
Jeffrey Alker Meyer  
United States District Judge